UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

MARK B. YONATY,

                              **Plaintiff,**

                v.                                        3:04-CV-605
                                                            (FJS/DEP)

AMERADA HESS CORPORATION,

                              **Defendant.**
_____

**APPEARANCES**                                          **OF COUNSEL**

**HINMAN, HOWARD & KATTELL, LLP**      **ALBERT J. MILLUS, JR., ESQ.**
700 Security Mutual Building
80 Exchange Street
Binghamton, New York 13902-5250
Attorneys for Plaintiff

**FRIEDMANN KAPLAN SEILER &**          **PAUL J. FISHMAN, ESQ.**
**ADELMAN LLP**                                    **LANCE J. GOTKO, ESQ.**
1633 Broadway
New York, New York 10019
Attorneys for Defendant

**SCULLIN, Senior Judge**

## MEMORANDUM-DECISION AND ORDER

### I. INTRODUCTION

      On August 14, 1998, Plaintiff, having bought out his father's interest, entered into a "Dealer Agreement Gasoline Station" ("1998 Agreement") to run the gas station ("Station") his father had operated since 1983 as an independent Hess franchise dealer in Binghamton, New York. Plaintiff's father rented the Station premises from Hess and purchased fuel from Hess for sale. On March 30, 2001, Plaintiff executed another Dealer Agreement ("2001 Agreement"). On

August 23, 2001, Plaintiff stopped selling gasoline and closed the Station.[1]

In his complaint, Plaintiff asserted three causes of action against Defendant related to the parties' business relationship prior to Plaintiff closing the Station: (1) breach of the contractual duty of good faith; (2) constructive termination of his franchise without just cause, in violation of New York General Business Law § 199-c(1); and (3) constructive termination of his franchise without just cause in violation of 15 U.S.C. § 2802, the Petroleum Marketing Practices Act ("PMPA").

Defendant filed a motion for summary judgment, which this Court granted in part and denied in part. *See, generally*, Memorandum-Decision and Order dated June 20, 2005. Specifically, the Court granted summary judgment with respect to Plaintiff's General Business Law claim and with respect to his breach-of-contract claim insofar as that claim was based on Plaintiff's allegations that Defendant set prices in bad faith, undersold him at nearby company stores, and limited his product line. The Court denied summary judgment with respect to Plaintiff's PMPA claim and with respect to his breach-of-contract claim insofar as that claim was based on Plaintiff's allegations that Defendant failed to maintain his station, acted in bad faith regarding the extension of credit, failed to deliver gasoline at reasonable times, and provided services to company stores but not to franchises. *See id.* at 24-25.

Currently before the Court is Defendant's motion for summary judgment on the merits of all of Plaintiff's remaining claims and on statute-of-limitations grounds with respect to Plaintiff's

---

[1] For a more comprehensive statement of undisputed facts refer to this Court's Memorandum-Decision and Order dated June 20, 2005, at 2-5.

-2-

PMPA claim.[2]

## II. DISCUSSION

**A.    Preliminary matter**

In his preliminary statement, although he does not make a second motion for reconsideration, Plaintiff suggests that the Court should revisit its dismissal of the "gasoline pricing" claims in light of the discovery that the parties have conducted. *See* Plaintiff's Memorandum of Law at 1-2.

In its June 20, 2005 Memorandum-Decision and Order, the Court, after a thorough discussion of the issue, found that Plaintiff had failed to raise a genuine issue of material fact with respect to Defendant's price setting practices and, therefore, dismissed Plaintiff's claims to the extent that they were based on pricing and underselling. *See* Memorandum-Decision and Order dated June 20, 2005, at 8-14. Plaintiff moved for reconsideration of that decision, asserting that Defendant's motion was premature prior to discovery. The Court rejected this argument, finding that Defendant was entitled to move for summary judgment at any time and that Rule 56(f) provided a means for Plaintiff to request discovery. *See* Order dated August 16, 2005, at 2. Furthermore, the Court found that Plaintiff's failure to file an affidavit pursuant to Rule 56(f) was sufficient grounds to reject a claim that his opportunity for discovery was inadequate. *See id.* at 3.[3]

---

[2] Defendant did not move for summary judgment with respect to, and the parties did not address, Defendant's counterclaim for breach of contract.

[3] Plaintiff also filed a Rule 54(b) motion to certify the Court's decision as a final

(continued...)

Based on the prior orders in this case, as well as Plaintiff's failure to set forth any facts to support his "suggestion" to revisit this issue, the Court declines Plaintiff's invitation to revisit this issue a third time.

**B.     Standard of review**

"Summary judgment is appropriate if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Holcomb v. Iona Coll.*, 521 F.3d 130, 137 (2d Cir. 2008) (citing Fed. R. Civ. P. 56(c)).  First, the moving party must demonstrate the absence of a genuine issue of material fact; then, the opposing party must present evidence, beyond the pleadings, to satisfy every element of the claim and to show a genuine issue for trial. *See id.* (citations omitted).  When considering a motion for summary judgment, the court must resolve all ambiguities and draw all permissible inferences in favor of the opposing party.  *See id.* (citation omitted).

**C.     Plaintiff's contractual-duty-of-good-faith claim**

In New York, "[i]mplicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance." *Dalton v. Educ. Testing Serv*, 87 N.Y.2d 384, 389 (1995) (citation omitted).  The covenant requires that the parties to a contract shall not do anything to frustrate any other party receiving the fruits of the contract.  *See id.* (citation omitted).  Where the contract allows a party discretion, a party may "not . . . act arbitrarily or irrationally in exercising

---

³(...continued)
judgment.  The Court denied that motion.  *See* Memorandum-Decision and Order dated February 7, 2007, at 6.

that discretion;" however, "no obligation can be implied that 'would be inconsistent with other terms of the contractual relationship.'" *Id.* (quotation and other citation omitted).

To show a breach of the covenant of good faith and fair dealing, a plaintiff must show "(1) fraud, (2) malice, (3) bad faith, (4) other intentional wrongdoing, or (5) reckless indifference to the rights of others such as gross negligence." *Log on Am., Inc. v. Promethean Asset Mgt. LLC*, 223 F. Supp. 2d 435, 451 (S.D.N.Y. 2001) (citation omitted). Finally, breach of the implied duty of good faith and fair dealing is "a breach of the underlying contract" under New York law and, "[t]o establish a *prima facie* case for breach of contract, a plaintiff must plead and prove: (1) the existence of a contract; (2) a breach of that contract; and (3) damages resulting from the breach." *Nat'l Market Share, Inc. v. Sterling Nat'l Bank*, 392 F.3d 520, 525 (2d Cir. 2004) (citations omitted).

### 1. *Station maintenance*[4]

The Dealer Agreements provided Defendant "sole discretion" with regard to capital improvements to the Station. *See* Defendant's Statement of Material Facts at ¶¶ 22(c), 27; Plaintiff's Response thereto. Therefore, although Defendant could not arbitrarily or irrationally exercise its discretion, invocation of the duty of good faith cannot compel Defendant to make capital improvements. *See Dalton*, 87 N.Y.2d at 389.

With respect to the electrical system, Defendant responded to all of Plaintiff's maintenance requests. *See* Defendant's Statement of Material Facts at ¶ 46; Plaintiff's Response

---

[4] The Court previously found that Plaintiff's assertions regarding Defendant's failure to repair the electrical system and its inadequate repair of the curbs were sufficient to raise a genuine issue. *See* Memorandum-Decision and Order dated June 20, 2005, at 18.

thereto.  Accordingly, Defendant has not failed to repair the electrical system.  Plaintiff's contention appears to be that Defendant should have upgraded the electrical system so that it experienced fewer failures.  Such upgrades, however, would constitute a capital improvement rather than maintenance; and Plaintiff has not shown that Defendant acted arbitrarily or irrationally in continuing to repair, rather than replace, the electrical system.

With respect to the alleged inadequate repair of the curbs, Defendant repaired the curbs and cured the safety issue.  *See* Defendant's Statement of Material Facts at ¶ 44; Plaintiff's Response thereto.  Although Plaintiff was unhappy with the appearance and quality of the repairs, Plaintiff has not raised a genuine issue of fact as to whether Defendant acted fraudulently, with malice, in bad faith, or committed intentional wrongdoing or gross negligence.  Therefore, the Court finds that Defendant's repair of the curbs, although perhaps not up to Plaintiff's standards or expectations, is not sufficient to support a claim for breach of the duty of good faith.

Plaintiff also raises the condition of the Station's pumps.  Plaintiff has admitted that Defendant offered to upgrade the pumps for a rent increase under the contract and that Plaintiff declined.  Plaintiff has also admitted that, although the "brains"[5] were becoming more difficult to repair due to the scarcity of parts, Defendant repaired the pumps whenever they broke down.  *See* Defendant's Statement of Material Facts at ¶¶ 48-51; Plaintiff's Response thereto.

The Court finds that, similar to the electrical system, any upgrade of the brains would be a capital improvement and that Plaintiff has not raised a genuine issue of fact that Defendant acted

---

[5] The parties refer to the electronic system that communicates with pumps and the cash registers as the "brains."  *See* Defendant's Statement of Material Facts at ¶ 49.

arbitrarily or irrationally in continuing to repair, rather than replace, the brains of the system.[6]

Finally, Plaintiff raises the condition of the pavement. Plaintiff testified that he or his father repaired the pavement. *See* Defendant's Statement of Material Facts at ¶ 54; Plaintiff's Response thereto. However, even if Defendant allowed pot holes in the pavement, the Court finds that Defendant's failure to fix those pot holes does not constitute fraud, malice, bad faith, intentional wrongdoing or gross negligence.

Accordingly, even after further discovery has clarified his allegations, Plaintiff has failed to come forward with any evidence that raises a genuine issue of material fact that would preclude the entry of summary judgment in favor of Defendant with respect to maintenance issues.

### 2. Extension of credit

Defendant has produced evidence that, on March 13, 2003, after four electronic draws on Plaintiff's bank account were refused, it placed Plaintiff in "red box" status, meaning that he had to obtain pre-approval for credit on each order. *See* Defendant's Statement of Material Facts at ¶¶ 62-64; Plaintiff's Response thereto. Defendant removed Plaintiff from "red box" status on July 7, 2003, and then returned him to that status on July 9, 2003, after another draw was refused.

---

[6] The Court notes that Plaintiff has raised several other capital improvements, such as the construction of a convenience store or the addition of canopies over the pumps. Plaintiff, however, has not produced any evidence that Defendant acted arbitrarily or irrationally in failing to make such improvements. Therefore, the Court finds that none of these alleged failures to make capital improvements can support Plaintiff's claim. Finally, the Court notes that Plaintiff declined one capital improvement that Defendant suggested – an upgrade of Plaintiff's pumps to include a "pay-at-the-pump" feature – because he could not afford to pay the resulting increase in rent under the contracts. *See* Defendant's Statement of Material Facts at ¶ 48; Plaintiff's Response thereto.

*See* Defendant's Statement of Material Facts at ¶¶ 65-66; Plaintiff's Response thereto.  Plaintiff's allegations about onerous credit terms relate to waiting only two to three days, instead of four to five days, to withdraw funds after Plaintiff placed an order so that Plaintiff could obtain sufficient funds.  *See* Defendant's Statement of Material Facts at ¶ 70; Plaintiff's Response thereto.

In its June 20, 2005 Memorandum-Decision and Order, the Court noted that, at that time, Plaintiff's allegations of onerous credit terms were sufficient to raise a genuine issue and that, "[a]lthough Defendant was certainly not contractually obligated to extend credit to Plaintiff, if it chose to do so, it had to observe honesty in fact and norms of commercial reasonableness in doing so."  *See* Memorandum-Decision and Order dated June 20, 2005, at 19.  The Court finds that, in light of the additional evidence in the record, Plaintiff has failed to raise a genuine issue of material fact that Defendant did not act honestly and observe the norms of commercial reasonableness in its credit dealings with Plaintiff.  Defendant did not change its policy but rather reasonably changed its credit terms after the bank refused to transfer funds to make Plaintiff's payments.  Accordingly, the Court finds that, even after further discovery clarified his allegations, Plaintiff has failed to raise any genuine issue of material fact that would preclude entry of summary judgment for Defendant with respect to Defendant's extension of credit to Plaintiff.

### 3. Delivery of gasoline

In its June 20, 2005 Memorandum-Decision and Order, the Court relied on a letter that Plaintiff sent to Defendant in October of 2001, in which he stated that the gasoline he ordered

arrived hours after he ran out of gasoline to find that, drawing every reasonable inference in his favor, Plaintiff had raised a genuine issue with respect to whether Defendant delivered gasoline to him in a reasonable time. *See* Memorandum-Decision and Order dated June 20, 2005, at 19-20. In opposing Defendant's current motion, Plaintiff makes no mention of delivery issues in 2001; instead, Plaintiff states that the gasoline delivery issues "go[] hand-in-hand with his claim regarding the credit practices." *See* Plaintiff's Memorandum of Law at 20.

In addition, Plaintiff now states that the problem began in May of 2002 and accelerated in 2003 when Defendant's credit policies required him to purchase small loads causing him to run out of gasoline. *See id.* During the critical time period before Plaintiff closed the Station between June and August of 2003, Defendant delivered gasoline to the Station almost every day. *See* Defendant's Statement of Material Facts at ¶ 80; Plaintiff's Response thereto. Thus, it appears that the issues are related to the amount of gasoline Plaintiff could afford to order and the processing time for those orders when Plaintiff was in "red box" status. *See* Defendant's Statement of Material Facts at ¶¶ 79-80, 82-83; Plaintiff's Response thereto.

For the same reasons that Defendant's placement of Plaintiff in "red box" status was reasonable, the Court finds that the delay in gasoline delivery was, likewise, reasonable, especially because Plaintiff was able to receive gasoline on a daily basis.[7]

---

[7] The Court notes that Plaintiff's real complaint with regard to gasoline delivery is not the time between Plaintiff's order and Defendant's shipment and delivery to Plaintiff, but rather the amount of gasoline that Plaintiff could order and the process through which Defendant extended credit to Plaintiff with regard to that order.

### *4. Voyager fleet card program*

In its June 20, 2005 Memorandum-Decision and Order, the Court found that Defendant had not presented a reason why it offered the Voyager program to its company stores but not to its franchises and, thus, there was a genuine issue as to whether Defendant acted in bad faith in exercising its discretion. *See* Memorandum-Decision and Order dated June 20, 2005, at 20-21.[8]

Defendant has presented evidence that it had no policy that prevented independent stations, like Plaintiff's, from entering into the Voyager program and that the Dealer Agreements made it clear that Plaintiff had the ability to enter into credit arrangements to offer his customers. *See* Defendant's Statement of Material Facts at ¶ 89. Furthermore, Defendant could not authorize or prevent Plaintiff from accepting the Voyager card; and several independent Hess franchises accept the Voyager card, having obtained the capacity to do so through their own initiative. *See id.* at ¶¶ 90-91. Indeed, Plaintiff contacted Voyager who told him that he could not implement the card at his Station based on his pumps' software and that a capital upgrade would be necessary. *See id.* at ¶ 92; Plaintiff's response thereto.[9]

The Court has already concluded that Plaintiff has not presented any evidence, or raised any genuine issues, to show that Defendant's failure to upgrade the pump "brains" constitutes a breach of the duty of good faith. Therefore, the Court finds that Plaintiff cannot sustain a claim

---

[8] Plaintiff presents two inconsistent theories as to why he was unable to offer the Voyager program to his customers: (1) the Voyager program was for company stores only and (2) Defendant was unwilling to make the necessary upgrades to his pumps to allow him to participate. If the program was only for company stores, then Defendant's unwillingness to upgrade Plaintiff's pumps is totally irrelevant.

[9] The Court notes that Plaintiff had a credit agreement with the Wright Express fleet credit card, which he arranged independently of any permission or cooperation from Defendant. *See* Defendant's Statement of Material Facts at ¶ 93; Plaintiff's Response thereto.

on the basis of Defendant's actions with respect to the Voyager card.

In sum, for all of the above-stated reasons, the Court finds that Defendant is entitled to summary judgment with respect to Plaintiff's breach-of-the-duty-of-good-faith claim because, as a matter of law, Defendant has not breached that duty and Plaintiff has not raised any genuine issues of fact requiring a trial.

**D.     Plaintiff's PMPA claim**

As the Court held in its June 20, 2005 Memorandum-Decision and Order, to succeed on his PMPA claim based on constructive termination, Plaintiff must show a breach of one of three "core components": (1) a contract to use a refiner's trademark, (2) a contract for the supply of motor fuel, and (3) the lease of the premises to sell motor fuel. *See* Memorandum-Decision and Order dated June 20, 2005, at 22-23 (quoting *Abrams Shell v. Shell Oil Co.*, 343 F.3d 482, 487 (5th Cir. 2003)). Since the Court has found that Plaintiff has failed to establish a claim for breaches of the duty of good faith, Plaintiff's constructive termination claim under the PMPA based on these breaches also fails because Plaintiff has not asserted a separate breach of any of the core components. Therefore, the Court grants Defendant's motion for summary judgment with respect to Plaintiff's PMPA claim.[10]

### III. CONCLUSION

After carefully considering the entire record in this matter, the parties' submissions, and

---

[10] Since the Court finds that Plaintiff's PMPA claim fails on its merits, the Court does not need to address the statute-of-limitations issue.

the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Defendant's motion for summary judgment is **GRANTED**; and the Court further

**ORDERS** that, within **ten (10) days** of the date of this Order, Defendant shall advise the Court and opposing counsel in writing whether it intends to proceed with its breach-of-contract counterclaim; and the Court further

**ORDERS** that, if Defendant advises the Court and opposing counsel that it intends to proceed with its counterclaim, the Court will schedule a telephone conference with the parties to set a trial date for this matter; and the Court further

**ORDERS** that, if Defendant advises the Court and opposing counsel that it does not intend to proceed with its counterclaim, the Court shall dismiss that counterclaim based on Defendant's representation that it does not intend to pursue that claim without further Order of this Court and, in that event, the Clerk of the Court shall enter judgment in favor of Defendant with respect to Plaintiff's claims and close this case.

**IT IS SO ORDERED.**

Dated: August 31, 2009
       Syracuse, New York

_____
Frederick J. Scullin, Jr.
Senior United States District Court Judge